[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action brought by the plaintiff against his ex-wife in which he alleges he lent the defendant (ex-wife) $71,000 pursuant to an oral agreement, which has not been repaid. In a second count he alleges that the defendant is unjustly enriched by refusing to repay the alleged loan.
The defendant has filed a counterclaim alleging that she paid the plaintiff some $24,000 for money he claimed she owed him prior to the divorce between the parties to which he was not entitled.
She has also filed two special defenses to the complaint as follows: first, that any money given to her by the plaintiff was a gift or second, any payments to her from the plaintiff were to repay loans she made to him.
The defendant has also raised the Statute of Frauds as a defense. She is permitted to raise this defense under a simple denial to the allegations of the complaint, pursuant to § 10-50 of the Practice Book. CT Page 196
Connecticut General Statutes § 52-550 provides in relevant part that "no civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party to be charged: . . . (b) upon any agreement for a loan in an amount which exceeds fifty thousand dollars."
While there was no written agreement as required by § 52-550 (b), it is established case law that equitable principles would take the Statute of Frauds out of play where one party, in reliance on the contract, has partially or fully performed so that repudiation would amount to a fraud. Santoro v. Mack, 108 Conn. 690 (1929). This rule of law, however, pre-supposes that a contract existed between the parties and that the acts performed are of such a character that they can reasonably and naturally be accounted for in no other way than that they were performed in pursuance of a contract between the parties. Santorov. Mack, supra p. 691.
The Court finds it difficult to give full credibility to the testimony of either of the parties, however some of the plaintiff's actions are illogical and disturbing.
The parties married in August 1992 when he was approximately 41 years of age and she was approximately 22 years old. He was then an engineer (M.E. degree) at Pratt Whitney. She had suffered from anorexia which required hospitalization and her work experience was described as "off and on". After a couple of years of marriage the plaintiff decided she should be contributing to their expenses and he starting keeping a so-called "tab" of what he believed her share of the expenses should be. When they divorced in January 1997 the amount of the "tab" was approximately $29,000. The "tab" had become a point of friction and the marriage deteriorated until a dissolution action commenced in September 1996. The plaintiff procured an attorney who prepared a separation agreement which the parties signed at the attorney's office the month prior to the return day of the dissolution action.
No financial affidavits were exchanged and when the parties appeared (pro-se) on January 27, 1997 for the dissolution hearing they were required by the Court to complete said affidavits before proceeding. The plaintiff failed to disclose his defined pension plan (which is presently paying him $2000 per month). It is the failure to disclose this significant asset which the Court finds disturbing.
By the terms of the separation agreement the wife received no alimony, no portion of the real estate, 401 K, or stocks totaling approximately $365,000 (not including the undisclosed pension). The plaintiff, CT Page 197 however, still wanted to be paid for the "tab" and drafted a document which the defendant signed, (Exhibit 3). In that document, dated July 31, 1996, the defendant promised to pay the plaintiff "money he loaned me to pay my debts prior to our divorce as per a list held by him." That was also not part of the separation agreement and was not made known to the divorce judge. (Also disturbing to this Court).
The separation agreement provided that the defendant would herself pay approximately $21,000 in credit card debt being joint liabilities of the parties, but that was separate from the "tab".
Subsequent to the dissolution of January 27, 1997, the plaintiff either gave the defendant three checks totaling $71,000 or deposited them in her account viz: On March 31, 1997, $40,000, on August 15, 1997, $28,000 and on March 28, 1998, $3,000. (Exhibit 1).
According to the plaintiff she called him, asked if he still had a home equity line and asked for a $40,000 loan. He testified she agreed to sign a promissory note (which was never done) and to make the monthly payments as required by the bank. He testified that she again asked for money in August and again in March. The defendant's version is that following the divorce, they talked often, that he had a key to her apartment and would come to visit the cats, that they went out socially a couple of times, that when she told him she had no way to pay the joint credit card debt of $21,000 he said "Let me see what I can do" and they talked about the unfairness of the separation agreement. That he later called her and told her he had good news and to check her account. That he kept asking her out (in effect courting her) and gave her the second checks to make up for the inequitable separation agreement.
Given the plaintiff's almost obsessive attention to financial details it is difficult for the Court to believe he would loan the defendant $28,000 after not getting a promissory note back for the initial $40,000.
Out of the money received by her, she did pay off the joint credit card debt which was approximately $30,000. She also gave the plaintiff $24,000 to settle the "tab", and used the rest primarily for living expenses.
The plaintiff has not established that there was a meeting of the minds between the parties or that the actions performed are of such a character that they can reasonably and naturally be accounted for in no other way than that they were performed in pursuance of a contract between them. The several telephone calls testified to and alluded to in the plaintiff's post-trial brief are not so definitive as to lead this Court to conclude they established the parties had a contract. CT Page 198
Nor has the plaintiff established he is entitled to recovery under a theory of unjust enrichment. Simply, he has not established he is entitled to repayment for the reasons previously discussed and this claim must fail.
With respect to the counterclaim, the defendant is correct that the plaintiff would not have been able to enforce his claim for payment of the "tab." The judgment of dissolution released her from any pre-existing obligation. But while it was not an enforceable debt, the defendant was free to chose, as she did, to compensate the plaintiff out of the money he subsequently gave her. She made that payment voluntarily, indeed testifying that she was helping him out after he was laid off.
The Court, on the issue of liability finds in favor of the defendant Judith Flynn on the complaint, and in favor of the plaintiff, Robert Amoroso, on the counterclaim.
Judgment shall enter accordingly,
Klaczak, J.